## FIRST NAT. BANK OF PORTLAND, OR., v. E. J. DODGE CO.

(Circuit Court of Appeals, Ninth Circuit.   May 1, 1916.)

### No. 2710.

INJUNCTION ⊕⇒41—PENDENTE LITE—RIGHT TO.

   Under Civ. Code Cal. § 309, which was the law of the state of complainant's domicile, a corporation was forbidden to buy in its own stock. A purported agent of the complainant corporation entered into a contract to purchase from defendant its own stock, and executed notes for the purchase price. Complainant denied that the agent was authorized, and also asserted the invalidity of the contract. Held that, as defendant might negotiate the notes to bona fide purchasers, who would take them free from such defenses, and as complainant might repudiate the contract, an injunction pendente lite against negotiation should be granted, notwithstanding an affidavit by defendant that the agent had authority.

   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 95; Dec. Dig. ⊕⇒41.]

Appeal from the District Court of the United States for the District of Oregon; Charles E. Wolverton, Judge.

Bill by the E. J. Dodge Company, a corporation, against the First National Bank of Portland, Or., a corporation. From an order granting an injunction pendente lite, defendant appeals. Affirmed.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for appellant. F. A. Cutler, of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

---

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HUNT, Circuit Judge. The substance of the complaint is: That about September 25, 1914, E. D. Porter, who was manager, secretary, and treasurer, and one of the directors, of the Dodge Company, a lumber manufacturing corporation of California, plaintiff below and appellee here, "purporting to represent" the Dodge Company, entered into an agreement with the bank, which then owned 200 shares of the capital stock of the Dodge Company, to buy these shares for $41,000. That in payment of the purchase price Porter executed and delivered, in the name of the Dodge Company, four promissory notes, negotiable in form, bearing interest at 4 per cent. per annum, payable to the bank in amounts and at the times following: $10,000 one year after date, $10,000 two years after date, $10,000 three years after date, and $10,000 four years after date. That the notes were held by the bank, and were to be held by it until the notes were fully paid, when they were to be delivered to the Dodge Company. That Porter had no right or authority from the Dodge Company, or otherwise, to make or enter into the agreement with the bank for the purchase of the 200 shares of stock, and no authority to make, execute, and deliver the notes to the bank, or to make any payments thereon. That the agreement referred to was made, and the notes executed and delivered by Porter, without the knowledge, consent, or ratification of the board of directors, or any of the stockholders, other than Porter, of the Dodge Company. That no record of the agreement or of the notes was ever entered on the records of the Dodge Company, and no knowledge of the same came to the directors or stockholders until about October 26, 1915, when the directors disapproved of and disaffirmed the transaction, and ordered that action be commenced to have the agreement of purchase and sale of the stock declared void, and to have the notes canceled and surrendered, and the money paid recovered. The complaint avers that the agreement of the Dodge Company to purchase its own stock from the bank is illegal and void, under section 309 of the Civil Code of California, and that the notes were executed without consideration and are wholly void; that the bank has the possession of the 200 shares of stock, which have never been transferred, and intends to negotiate and transfer the notes to bona fide purchasers for value, and that such negotiation and transfer will greatly damage the Dodge Company; and that Porter, without right or authority, in carrying out the terms of the agreement, has paid to the bank from funds of the Dodge Company various sums on account of interest and principal on the notes. The Dodge Company relinquishes all right to the 200 shares, and consents that title and possession may remain with defendant. The prayer is for preliminary injunction restraining the bank from negotiating the notes pending suit and from instituting suit upon the notes, or any of them, and for decree canceling and ordering the bank to surrender the notes to the Dodge Company, and for $7,054 paid by Porter to the bank on account of the notes.

Upon the return day of the order to show cause the bank appeared and filed an affidavit of its vice president and cashier, admitting that about September 25, 1914, the Dodge Company, by Porter, and the bank entered into and executed the agreement for the sale by the bank to the Dodge Company of 200 shares of stock; but the affiant

denied that Porter had no authority to make and execute the agreement and the notes, denied that the transaction was without the knowledge of the board of directors or stockholders of the Dodge Company, other than Porter, denied that there was no record of the transaction in the books of the Dodge Company, or that the directors and stockholders knew nothing of the matter until about October 26, 1915. Affiant alleged good faith in the whole transaction, and that the bank bought the stock in pursuance of an understanding and agreement with the Dodge Company that the bank would acquire the stock and sell the same to the Dodge Company, and that the negotiations with respect to the sale were had with Porter, who, in affiant's belief, was clothed with full authority to act. Attached to the affidavit is what appears to be a copy of a resolution adopted by the board of directors of the Dodge Company at a special meeting of the corporation held in San Francisco September 25, 1914. The resolution recites the advisability of acquiring 200 shares of the capital stock of the corporation "issued to E. H. Dodge, now owned by the First National Bank of Portland, for the sum of $41,000," and authorizes the secretary, on behalf of the corporation, to issue three notes, for $10,000 each, maturing in one, two, and three years, respectively, and one note, for $11,000, maturing in four years, to the bank in full payment of the stock.

The court having issued the injunction pendente lite, the question for our consideration is whether or not, upon the showing made, the District Court erred in granting injunctive relief pending the litigation. The contract between the Dodge Company and the bank is executory, in that the bank is not to deliver the stock to the Dodge Company until the notes are all paid in full; it being provided that until such payments are made, title and possession of the stock are to remain in the bank. Clearly, unless prevented by judicial order, the bank can negotiate the notes made to it by the Dodge Company, and if the notes are negotiated, and pass into the hands of bona fide purchasers for value without notice, and suit is brought to collect, the Dodge Company may not be able to make the defense that the notes were made without authority in Porter and without knowledge by the directors, and that the stock was purchased in violation of the laws of the state of California. No rights of creditors are in question. The issue of purchase and sale of shares is directly between the corporation and the stockholders therein. Therefore, if the agreement made by the alleged representative of the corporation and a shareholder, whereby the corporation was to buy its capital shares, was never authorized or assented to, and is malum prohibitum, the corporation itself may rescind or assail the validity of such contract and under just conditions be relieved.

Section 309 of the Civil Code of California provides that the directors of corporations must not divide, withdraw, or pay to the stockholders, or any of them, any part of the capital stock (except as specially provided in the statutes), nor must they reduce or increase the capital stock, except as specially provided by statute. In Schulte v. Boulevard Gardens Land Company, 164 Cal. 464, 129 Pac. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013, the Supreme Court of the state defined the phrase "capital stock," as used in the section re-

ferred to, as "not the shares of which the nominal capital is composed, but the actual capital, i. e., assets with which the corporation carries on its business," and held that under the statutes of California a corporation cannot employ its assets for the purchase of its own stock, "for the result would be to illegally withdraw and pay to a stockholder a part of the capital stock." The court says that want of power to buy its own stock may not prohibit a corporation from taking its stock in satisfaction of a loan, or when otherwise necessary to save itself from loss, or, for instance, where the particular facts show that an agreement has existed whereby the corporation, in part consideration of an entire contract under which its stock was originally issued, has obligated itself to repurchase stock at a stated price upon election by a shareholder.

With this interpretation of the statute of the state under which the Dodge Company is incorporated, and with positive allegations of lack of any authority in Porter to act for the corporation, and of lack of knowledge in the directors of the execution of the agreement to purchase, and of the execution of the notes in the name of the Dodge Company, we cannot hold that the bill lacked equity, and that the affidavit filed by the bank made such a strong showing as to take from the court that latitude of discretion whereby it maintained the status quo until final hearing, when all the facts are brought out and the question of right between the parties can be decided. Wright et al. v. Pipe Line Company, 101 Pa. 204, 208, 47 Am. Rep. 701.

The order of the lower court is affirmed.