### E. J. DODGE CO. v. FIRST NAT. BANK OF PORTLAND, OR.

(District Court, D. Oregon. June 25, 1917.)

CORPORATIONS ☞377(2)—CANNOT CONTRACT FOR PURCHASE OF OWN STOCK.

> Under Civ. Code Cal. § 309, prohibiting directors from dividing or paying to stockholders any part of the capital stock of a corporation, a California corporation cannot make a valid contract for purchase of its own stock, and may maintain a suit to cancel such a contract, whether or not it was authorized by its directors.

In Equity. Suit by the E. J. Dodge Company against the First National Bank of Portland, Or. Decree for complainant.

F. A. Cutler, of San Francisco, Cal., for plaintiff.

Dolph, Mallory, Simon & Gearin, of Portland, Or., for defendant.

RUDKIN, District Judge. The issues presented by the complaint are thus succinctly stated by Judge Hunt on the appeal from the order granting a temporary injunction:

"The substance of the complaint is: That about September 25, 1914, E. D. Porter, who was manager, secretary, and treasurer, and one of the directors, of the Dodge Company, a lumber manufacturing corporation of California, plaintiff below and appellee here, 'purporting to represent' the Dodge Company, entered into an agreement with the bank, which then owned 200 shares of the capital stock of the Dodge Company, to buy these shares for $41,000. That in payment of the purchase price Porter executed and delivered, in the name of the Dodge Company, four promissory notes, negotiable in form, bearing interest at 4 per cent. per annum, payable to the bank in amounts and at the times following: $10,000 one year after date, $10,000 two years after date, $10,000 three years after date, and $10,000 [$11,000] four years after date. That the notes were held by the bank, and were to be held by it until the notes were fully paid, when they were to be delivered to the Dodge Company. That Porter had no right or authority from the Dodge Company, or otherwise, to make or enter into the agreement with the bank for the purchase of the 200 shares of stock, and no authority to make, execute, and deliver the notes to the bank, or to make any payments thereon. That the agreement referred to was made, and the notes executed and delivered by Porter, without the knowledge, consent, or ratification of the board of directors, or any of the stockholders, other than Porter, of the Dodge Company. That no record of the agreement or of the notes was ever entered on the records of the Dodge Company, and no knowledge of the same came to the directors or stockholders until about October 26, 1915, when the directors disapproved of and disaffirmed the transaction, and ordered that action be commenced to have the agreement of purchase and sale of the stock declared void, and to have the notes canceled and surrendered, and the money paid recovered. The complaint avers that the agreement of the Dodge Company to purchase its own stock from the bank is illegal and void, under section 309 of the Civil Code of California, and that the notes were executed without consideration and are wholly void; that the bank has the possession of the 200 shares of stock, which have never been transferred, and intends to negotiate and transfer the notes to bona fide purchasers for value, and that such negotiation and transfer will greatly damage the Dodge Company; and that Porter, without right or authority, in carrying out the terms of the agreement, has paid to the bank from funds of the Dodge Company various sums on account of interest and principal on the notes. The Dodge Company relinquishes all right to the 200 shares, and consents that title and possession may remain with defendant. The prayer is for preliminary injunction restraining the bank from negotiating the notes pending suit and from instituting suit upon the notes, or any of them, and for decree canceling and ordering the bank to surrender the notes to the Dodge Company, and for $7,054 paid by Porter to the bank on account of the notes." First Nat. Bank of Portland, Or. v. E. J. Dodge Co., 233 Fed. 74, 147 C. C. A. 144.

The answer denies the want of authority in Porter to purchase the stock or execute the notes, denies that the contract is illegal and void under the laws of the state of California, and by way of estoppel alleges:

"That prior to the 25th day of September, 1914, the E. H. Dodge Lumber Company, a corporation under the laws of the state of Oregon, doing business at Portland, Or., was justly indebted to the Security Savings and Trust Company, a banking and trust company, doing business at Portland, Or., for moneys advanced and obligations which the said E. H. Dodge Lumber Company had assumed in favor of the said Security Savings & Trust Company in a sum exceeding $40,000.00; that E. H. Dodge, the president of said E. H. Dodge Lumber Company, being the owner of 200 shares of the capital stock of the plaintiff corporation, had theretofore pledged said 200 shares of stock to said Security Savings & Trust Company as collateral security for said indebtedness;

that while such indebtedness was so due and owing from the said E. H. Dodge Lumber Company to the said Security Savings & Trust Company, and during the summer of 1914, and long prior to September 25th of that year, the plaintiff, acting by and through one F. D. Parr, its agent for that purpose, and E. D. Porter, manager, secretary, and treasurer of said plaintiff, and a director of said corporation, and as this defendant is advised and believes, and therefore alleges upon information and belief, by due authority of its board of directors, entered into negotiations with this defendant to acquire the title and ownership of said 200 shares of stock so held by said Security Savings & Trust Company, and thereupon plaintiff agreed with this defendant that if this defendant would cause said Security Savings & Trust Company to foreclose its said lien upon said 200 shares of stock, and would acquire the legal title and ownership of said stock, when title to said stock was so acquired the said plaintiff would purchase the same from this defendant; that, in pursuance of said agreement, defendant arranged with said Security Savings & Trust Company to foreclose its said lien upon said 200 shares of stock, so that this defendant could, and thereafter did, acquire full title and ownership of said stock; that thereafter, in consummation of the said agreement and understanding so had with the plaintiff, this defendant sold the said 200 shares of stock to the plaintiff for the sum of $41,000, accepting in payment therefor the promissory notes mentioned and described in plaintiff's bill of complaint, and by agreement of the parties the defendant retained the possession of said shares of stock as collateral security; that the plaintiff, acting by said E. D. Porter, its manager, secretary, and treasurer, in the name and under the corporate seal of said plaintiff, duly executed and delivered to the defendant the four promissory notes described in said bill of complaint, said notes being delivered to defendant at Portland, Or., and all of said notes being dated and payable at Portland, Or., and to evidence his authority to act for plaintiff, said E. D. Porter as such manager, secretary, and treasurer delivered to this defendant a certified copy of a resolution which he represented to defendant had been duly adopted by the board of directors of the plaintiff corporation at a meeting thereof duly held on September 25, 1914, as follows."

Here follows what purports to be a resolution authorizing the purchase of the stock and the execution of the notes in payment of the purchase price.

It will thus be seen that, aside from the question of estoppel, two issues are presented by the pleadings: First, the authority of Porter to purchase the stock and execute the promissory notes; and, second, the power or authority of the corporation itself. The first is largely a question of fact; the second, a question of law. While Porter, as general manager and secretary, had no express authority to make the purchase of the corporate stock or to execute promissory notes for the purchase price, and while he was not expressly authorized so to do by the board of directors, I would nevertheless feel constrained to hold that the corporation is now estopped to deny his authority, if that were the only issue in the case. For many years Porter, as general manager, had entire charge of the extensive business operations of the corporation; during the year in which this transaction occurred there was but one meeting of the board of directors; there was no fraud or concealment in the transaction; the corporation books showed the payment of large sums of money to the defendant, and the slightest diligence or inquiry on the part of other members of the corporation would disclose the purpose for which these payments were made. In this day and age when so large a part of the business of the world is transacted by corporations, a majority of whose directors

are nominal stockholders and mere figureheads, it is not in the interest of public policy, private morality or common honesty to permit them to drift along and, upon a change of management, adopt such contracts as are beneficial and reject such as prove unprofitable. Counsel for plaintiff asserts that the directors could not carry out this contract without violating the laws of the state of California, but I apprehend, if the stock had enhanced in value, the directors would find no difficulty in performing the contract and making some disposition of the stock without doing violence to either their consciences or the laws of the state.

On the other hand, I see no escape from the conclusion that the contract in question is in contravention of the laws of the state of California. Section 309 of the Civil Code of that state prohibits directors of corporations from dividing, withdrawing, or paying to the stockholders, or any of them, any part of the capital stock, or from reducing or increasing the capital stock except as therein provided. In discussing the effect of this prohibition in Schulte v. Boulevard Gardens Land Co., 164 Cal. 464, 129 Pac. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013, the court said:

"The position of the respondent is that the contracts for the retaking by the corporation of its own shares are illegal and void, as in violation of the provisions of section 309 of the Civil Code, prohibiting directors of corporations from dividing, withdrawing, or paying to the stockholders, or any of them, any part of the capital stock, or from reducing or increasing the capital stock, except as provided in the section. The phrase 'capital stock,' as used in this section, and in the section of the Practice Act from which the code provision was drawn, has been construed in various decisions of this court. Its meaning has been definitely settled to be, not the shares of which the nominal capital is composed, but the actual capital i. e., assets with which the corporation carries on its corporate business. * * * Although the prohibition runs, in terms, only against the directors, the effect of the section is to deprive the stockholders as well of power to do the forbidden acts. * * * In other jurisdictions, the authorities show a sharp conflict over the question whether, in the absence of any statutory or charter restrictions, a corporation may employ its assets for the purchase of shares of its own stock. Cook Corp. (6th Ed.) § 311. But in view of the code provisions to which we have referred it cannot be doubted that, in this state, a corporation is not authorized to make such purchase, since the result would be to illegally withdraw, and pay to a stockholder a part of the 'capital stock.' Bank of San Luis Obispo v. Wickersham, 99 Cal. 655, 661, 34 Pac. 444. The want of power to buy its own stock does not prohibit a corporation from taking the stock in satisfaction of a loan, or when otherwise necessary to save itself from loss (Ralston v. Bank of Cal., 112 Cal. 208, 213, 44 Pac. 476); but the general rule is, as above stated, that the purchase is unauthorized. Thus this court has condemned, as in violation of section 309, a by-law assuming to give to any stockholder the right, upon 60 days' notice, to withdraw from the corporation, and to receive, upon surrender of his stock, the amount paid therefor." Vercoutere v. Golden State Land Co., 116 Cal. 410, 48 Pac. 375.

The plaintiff is a creature of the laws of the state of California, and its powers are limited and defined by those laws as construed by the highest court of the state. These powers may not be enlarged or extended by contracting beyond the limits of the state, if it be conceded that the contract in question is an Oregon contract, which admits of some doubt; and if, under the laws of California a corporation may not purchase or traffic in its own stock, the fact that corporations

in other jurisdictions may do so, or may make such purchases from their surplus profits, is not material. Such being the law, it seems to me that the California decision above cited is controlling and decisive here. I am aware that the defense that a contract is ultra vires, or in violation of a statute, is not a special favorite of the law, because such a defense is almost invariably interposed from sordid motives; but the courts permit the defense ex mero motu, and not from any consideration for the immediate parties. If the contract is ultra vires, and beyond the power of either the board of directors or the stockholders to make, the facts pleaded as an estoppel constitute no defense. To permit corporations to contract by estoppel, where contracts are prohibited by law, would in effect override the statute. If the plaintiff is entitled to the equitable relief claimed, it follows as a matter of course that it is entitled to recover all sums paid under the void contract.

A decree will therefore be entered in accordance with the prayer of the complaint.