[S. F. No. 5833. In Bank.—January 9, 1913.]

## HENRY B. SCHULTE, Appellant, v. BOULEVARD GARDENS LAND COMPANY (a Corporation), Respondent.

CORPORATION—CAPITAL STOCK DEFINED—ASSETS—PROHIBITION AGAINST PAYING TO STOCKHOLDERS.—The phrase "capital stock," as used in section 309 of the Civil Code, prohibiting directors of corporations from dividing, withdrawing, or paying to the stockholders, or any of them, any part of the capital stock, or from reducing or increasing the capital stock, except as therein provided, means the actual capital, the assets, with which the corporation carries on its corporate business, and not the shares of which the nominal capital is composed.

ID.—STOCKHOLDERS HAVE NO POWER TO DO FORBIDDEN ACTS.—Although the prohibition of that section runs, in terms, only against the directors, the effect of the section is to deprive the stockholders as well, of power to do the forbidden acts.

ID.—CORPORATION CANNOT PURCHASE ITS OWN STOCK.—In view of that section, a corporation in this state, is not authorized to employ its assets for the purchase of shares of its own stock, since the result would be to illegally withdraw and pay to a stockholder a part of the capital stock.

ID.—AGREEMENT OF CORPORATION TO REPURCHASE STOCK—CONDITION OF CONTRACT UNDER WHICH STOCK WAS ISSUED.—An agreement by a corporation, constituting a condition and a part of the consideration of an entire contract under which its stock was originally issued, obligating it, at the election of the stockholder, to repurchase the stock at a stated price, is not within the inhibition of the section. Such an agreement is enforceable against the corporation, subject to the qualification that the rights of creditors are not injuriously affected, and that it would not result in a fraudulent invasion of the rights of other stockholders.

ID.—AMOUNT PAYABLE ON RETURN OF STOCK IMMATERIAL.—It is immaterial to the validity of such an agreement whether the amount to be paid by the corporation on the return of the stock was equal to, or more or less than, the original price for which it was issued.

APPEAL from a judgment of the Superior Court of Alameda County.   John Ellsworth, Judge.

The facts are stated in the opinion of the court.

J. A. Elston, and George Clark, for Appellant.

Keyes & Martin, and Leon E. Martin, for Respondent.

SLOSS, J.—The plaintiff appeals from a judgment in favor of defendant, entered upon an order sustaining, without leave to amend, a demurrer to the plaintiff's first amended complaint.

The complaint contains eighteen counts, but, by stipulation of the parties, only the first, the second, the third, the tenth, the eleventh, and the twelfth counts are included in the transcript, the omitted counts being, so far as concerns the legal questions here involved, precisely similar to one or another of those before us.

The first count, with amendments subsequently made thereto, alleges that on April 3, 1908, the defendant, a corporation organized under the laws of California, executed and delivered to plaintiff a written agreement, reading as follows:

"Berkeley, Cal., April 2nd, 1908.

"This agreement to accompany Boulevard Gardens Certificate of Stock No. 165, issued to Henry B. Schulte under date of April 3rd, 1908.

"First.   We, the undersigned, individually and severally, promise and agree that should there be at any time any assessment levied against above described certificate of stock, we will pay the same.

"Second.   We further promise and agree on behalf of the Boulevard Gardens Land Company, that should the purchaser of said stock certificate at any time prior to the payment of dividends equaling the face value of said stock wish to sell the same, we will repurchase it at par value providing that

we receive ninety (90) days' notice 'of such desire to sell; and should the stock above described be so repurchased by us under this agreement, we will pay to the holder thereof a sum equal to eight (8 pct.) per cent net upon the face value thereof from the date of its purchase to the date of its sale to us.

>"(Signed)  George Schmidt, President.
>"G. W. Skilling, Vice-Pres.
>"Edward Bonsall, Director.
>·"For the Boulevard Gardens Land Co.

"(Corporate Seal.)"

The certificate referred to in the agreement was a certificate, issued to plaintiff as owner, for twenty shares of the capital stock of the defendant corporation, of the par value of one hundred dollars per share. It was issued and the agreement executed for the single and entire consideration of two thousand dollars, paid by plaintiff to defendant, and the certificate, with the written agreement, formed parts of a single transaction and an entire contract. No dividends were ever declared or paid. On December 3, 1909, plaintiff gave to defendant notice that he desired defendant, at or before the expiration of ninety days, to repurchase the shares as agreed, and offered to indorse and return the certificate. After the lapse of ninety days, to wit, on March 8, 1910, plaintiff repeated his demand and tender, and is still able and willing to comply with the terms of his tender. The defendant refused to pay, and has not paid, any part of the sum of two thousand dollars agreed to be paid to plaintiff.

It is further alleged that, at the time the contract was made and ever since, the defendant owned and owns surplus. profits exceeding, by over fifty thousand dollars, the sum of the corporate debts, together with the value of everything received by the defendant in exchange for its issued shares of stock. The defendant could comply with its contract without injury to any creditor or stockholder.

The second count relies upon the same contract. It omits the allegation of tender, but seeks to show that a tender would have been useless. Otherwise, the count does not differ from the first. The third count contains substantially the same averments of fact as the first, but is framed with a view

to demanding a return of the money paid, on the theory that the contract is illegal.

The tenth count is based on a contract between the defendant and one D. N. Mitchell, in the following form:

"Berkeley, Cal., Sept. 9th, 1907.

"The Boulevard Gardens Land Company, incorporated, hereby agrees to pay to D. N. Mitchell of Calistoga, Calif., at any time after one year (and not exceeding eighteen months) from the date hereof the sum of Twelve Hundred and Fifty ($1250.00) Dollars, together with interest at 6 per cent from this date on $1000.00 for the return and surrender of Ten (10) shares of Boulevard Gardens Stock to-day issued to him and recorded on the books of the company.

"The Boulevard Gardens Land Company, Inc.

"By GEORGE SCHMIDT, Pres.

"By G. W. SKILLING, Vice-Pres."

It will be observed that while Schulte's contract calls for the return, only, of the purchase price of the shares, with interest, the Mitchell agreement assumes to bind the defendant to pay a bonus of twenty-five dollars per share, if it be assumed—there is no direct allegation on this point—that the shares were bought from the company at par. The plaintiff claims as assignee of Mitchell's rights. In other respects, the averments of the tenth count are like those of the first. With like exceptions, the eleventh count corresponds to the second, and the twelfth to the third.

The demurrer went to each count. It was based on the ground of want of facts, and contained, as well, various specifications of uncertainty, ambiguity, and unintelligibility. We think none of the special assignments would have justified a sustaining of the demurrer without leave to amend, and we shall therefore confine our discussion, as counsel have done, to the consideration of the general ground of want of facts to constitute a cause of action.

The position of the respondent is that the contracts for the retaking by the corporation of its own shares are illegal and void, as in violation of the provisions of section 309 of the Civil Code, prohibiting directors of corporations from dividing, withdrawing or paying to the stockholders, or any of them, any part of the capital stock, or from reducing or increasing the capital stock, except as provided in the section.

The phrase "capital stock," as used in this section, and in the section of the Practice Act from which the code provision was drawn, has been construed in various decisions of this court. Its meaning has been definitely settled to be, not the shares of which the nominal capital is composed, but the actual capital, i. e., assets, with which the corporation carries on its corporate business. (*Martin* v. *Zellerbach,* 38 Cal. 309, [99 Am. Dec. 365]; *San Francisco & N. P. R. R. Co.* v. *Bee,* 48 Cal. 398; *Kohl* v. *Lilienthal,* 81 Cal. 385, [6 L. R. A. 520, 20 Pac. 401, 22 Pac. 689]; *Tapscott* v. *Mex. Col. etc. Co.,* 153 Cal. 667, [96 Pac. 271]; *Burne* v. *Lee,* 156 Cal. 222, [104 Pac. 438].) Although the prohibition runs, in terms, only against the directors, the effect of the section is to deprive the stockholders as well of power to do the forbidden acts. (*Kohl* v. *Lilienthal,* 81 Cal. 385, [6 L. R. A. 520, 20 Pac. 401, 22 Pac. 689]; *Burne* v. *Lee,* 156 Cal. 222, [104 Pac. 438].)

In other jurisdictions, the authorities show a sharp conflict over the question whether, in the absence of any statutory or charter restrictions, a corporation may employ its assets for the purchase of shares of its own stock. (Cook on Corporations, 6th ed., sec. 311.) But in view of the code provisions to which we have referred, it cannot be doubted that, in this state, a corporation is not authorized to make such purchase, since the result would be to illegally withdraw, and pay to a stockholder a part of the "capital stock." (*Bank of San Luis Obispo* v. *Wickersham,* 99 Cal. 655, 661, [34 Pac. 444].) The want of power to buy its own stock does not prohibit a corporation from taking the stock in satisfaction of a loan, or when otherwise necessary to save itself from loss (*Ralston* v. *Bank of California,* 112 Cal. 208, 213, [44 Pac. 476]), but the general rule is, as above stated, that the purchase is unauthorized. Thus, this court has condemned, as in violation of section 309, a by-law assuming to give to any stockholder, the right, upon sixty days' notice, to withdraw from the corporation, and to receive, upon surrender of his stock, the amount paid therefor. (*Vercoutere* v. *Golden State L. Co.,* 116 Cal. 410, [48 Pac. 375].)

In the case at bar, however, we have something more than a mere attempt by a stockholder to sell, and by the corporation to buy, shares of stock. The plaintiff is seeking to enforce a part of an entire contract under which the stock was

originally issued to him. The right to return the stock and to receive the sum agreed to be paid upon such return was a material and indivisible part of the consideration upon which the plaintiff agreed to become a stockholder. As between the parties, it would be manifestly unjust to permit the corporation to retain the money paid by plaintiff, and at the same time to repudiate the promise which it gave in exchange for the money. The obligation to pay, upon a return of the shares, the sum agreed to be paid, is not to be viewed as a new undertaking, arising after the plaintiff has assumed the relation of stockholder. It came into being coincidentally with the contract by which plaintiff became a stockholder. The sale to plaintiff was conditional. He never became a stockholder except subject to the qualification that he might return his shares upon the stipulated terms. In *Ophir Cons. Mines Co.* v. *Brynteson,* 143 Fed. 829, [74 C. C. A. 625] the circuit court of appeals for the seventh circuit, in upholding the right of recovery under a contract similar to those in the case at bar, used this language: "It is contended that the contract violates section 485, Mills' Ann. St. Colo., which prohibits the use by corporations of any of their funds 'for the purchase of stock in their own company or corporation, except such as may be forfeited for the nonpayment of assessments thereon.' This agreement is in no sense within the meaning or object of the provision referred to. The stock was held in the treasury of the company to raise funds for improvements, upon such terms of sale as were adopted by the president. The right to so hold and own the stock remains in the corporation until an absolute sale is made. No such sale arose under the agreement in suit. It was of the well recognized class, known as a contract of 'sale or return,' as defined in *Sturm* v. *Boker,* 150 U. S. 312, 328, [37 L. Ed. 1093, 14 Sup. Ct. Rep. 99], where the title passes for the time being, but subject to the option of the purchaser to rescind and return the property within the time stipulated. With the exercise of the option the contract of sale terminates and the right and title of the corporation is restored to its original *status.* No sale has been accomplished, and no purchase or repurchase arises upon the part of the corporation through the return of its unsold stock."

The great weight of authority is in accord with this view. Contracts of the kind under discussion have generally been sustained, and this, too, in jurisdictions in which corporations are not permitted to purchase their own stock.    (*Browne* v. *St. Paul Plow Works,* 62 Minn. 90, [64 N. W. 66]; *Vent* v. *Duluth C. & S. Co.,* 64 Minn. 307, [67 N. W. 70]; *Porter* v. *Plymouth G. M. Co.,* 29 Mont. 347, [101 Am. St. Rep. 569, 74 Pac. 938]; *Sweeney* v. *United Underwriters Co.* (S. D.), 137 N. W. 379; *Jones* v. *Johnson,* 86 Ky. 530, [6 S. W. 582]; see, also, 10 Cyc. 416; 2 Cl. & M. Pr. Corp., sec. 475; 1 Cook on Corporation, 6th ed., secs. 83, 170.)    A similar ruling has been made in this state in *Dickinson* v. *Zubiate Mining Co.,* 11 Cal. App. 656, [106 Pac. 123].    The case of *Vercoutere* v. *Golden State L. Co.,* 116 Cal. 410, [48 Pac. 375], is strongly relied on by respondent as establishing the contrary doctrine in California.    But the case is readily distinguishable from the one at bar.    There the plaintiff relied solely upon a by-law which assumed to authorize every subscriber and stockholder to withdraw from the corporation and, upon returning his stock, receive what had been paid in.    Obviously this, if upheld, would have made possible a complete destruction and dissolution of the corporation without compliance with the statutory requirements.    As a by-law the provision was clearly bad.    But a very different case is presented where an individual sets up a contract whereby the corporation selling him stock agrees, as part of the consideration, to give him the option of returning the stock and receiving a payment therefor.

All that has been said is subject to the qualification that the rights of creditors are not to be affected by any arrangement between the purchaser of stock and the corporation. Undoubtedly a creditor of the corporation would be entitled to hold the conditional purchaser as a stockholder and to insist that the amount of his subscription be made applicable to the satisfaction of the corporate debts.    In most of the cases cited by appellant, the courts were dealing with states of fact in which the rights of creditors were involved.    But no such question arises here, the complaint alleging that the assets of the corporation are greatly in excess of its indebtedness.

Nor does this case present the question of invalidity of secret stipulations limiting the apparent liability of certain subscribers. Such stipulations have been frequently denounced as a fraud upon other subscribers, as well as creditors of the corporation. (2 Cl. & M. Pr. Corp., sec. 467c.) But the allegations of the complaint do not bring the case within the rule. No fact is alleged which would justify the inference that any fraudulent invasion of the rights of other stockholders (or, as already stated, creditors) had been attempted or would result.

Under the views stated, the complaint clearly states a cause of action on the agreement between Schulte and the defendant. This contract calls for the return of the purchase price, with interest. We cannot see that any different considerations apply to the Mitchell agreement. That instrument requires the corporation to pay one thousand two hundred and fifty dollars on the return of shares of the par value of one thousand dollars. But if the parties had the right to agree, upon the original sale of the stock, that the purchaser should have the option to return the stock and receive a money payment, it can make no difference whether the amount to be so paid was equal to, or more or less than, the original price. In either case the right to have the payment upon tender of the stock was reserved by the purchaser as a condition upon which he took his stock. The validity of the condition cannot depend upon the amount of the payment.

The judgment is reversed, with directions to the court below to overrule the demurrer, granting leave to the defendants to answer within a stated time.

Melvin, J., Henshaw, J., and Shaw, J., concurred.