[Civ. No. 1737.    Third Appellate District.—November 26, 1917.]

## TIDEWATER SOUTHERN RAILWAY COMPANY (a Corporation), Appellant, v. G. MERZ, Respondent.

CORPORATION LAW—CONDITIONAL CONTRACT FOR SUBSCRIPTION OF STOCK—ENFORCEMENT AGAINST SUBSCRIBER.—A contract for the purchase of corporation stock on which there was indorsed at the request of the subscriber by the sales agent of the corporation an agreement that the subscriber should have the right at any time within ten months to return the stock and receive back his note or cash, is not binding on the subscriber by reason of his failure to give the notice contemplated in the indorsement, where the sales agent was without authority to make the indorsement, but made the same upon the promise to submit the whole matter to the corporation for its acceptance or rejection, which promise was not carried out, but instead the subscription entered on the books of the corporation without the indorsed condition.

APPEAL from a judgment of the Superior Court of Kings County.    M. L. Short, Judge.

The facts are stated in the opinion of the court.

Meredith, Landis & Chester, for Appellant.

H. Scott Jacobs, for Respondent.

CHIPMAN, P. J.—This is an action brought by plaintiff to recover the sum of two thousand five hundred dollars, together with seven per cent interest thereon from November 14, 1911, upon the following contract:

"Agreement to Purchase Stock.

"I, the undersigned, hereby subscribe for 2000 shares of the common stock of The Tide Water and Southern Railroad Company, a corporation, formed and existing under the laws of California, and having its principal place of business in the City of Stockton, State of California.

"I hereby agree to pay for such stock the sum of $2500.00, one year note, the full par value thereof, and to make such payments, to said corporation at the time and in the manner following: $2500.00 upon the signing of this agreement, and a further payment of $      on or before the      until the full purchase price of said shares shall have been paid, when a certificate of stock shall be issued to purchaser.

"Said corporation, to which I agree to make payments as aforesaid, is hereby authorized to demand, collect and recover the money hereby agreed to be paid.

"Payment must be made direct to The Tide Water and Southern Railroad Company, at its offices, room 4, Physicians' Building, Stockton, California.

"Witness my hand this 14th day of November, 1911.

"Name.  G. MERZ.
"Street and Number.  Lemoore Bank.
"City or Town.  Lemoore.
"State.  Cal.
"Written by AVERY."

The cause was tried by the court without a jury and defendant had judgment from which plaintiff appeals.

It is alleged in the complaint and found by the court that The Tidewater & Southern Railroad Company was a duly organized corporation in 1910, and continued so to be until March 11, 1912; that about the sixteenth day of February, 1912, and continuously thereafter to and including March 11, 1912, The Tidewater & Southern Transit Company was a railroad company duly organized; that on or about March 11, 1911, "the said Tide Water & Southern Railroad Company duly amalgamated and consolidated its capital stock, properties, roads, equipments, adjuncts, franchises, claims, demands, contracts, agreements, obligations, debts, liabilities,

and assets of every kind and description with the capital stock
. . . liabilities and assets of every kind and description of
the said The Tide Water & Southern Transit Company," and
by such amalgamation and consolidation "there was created
a new railroad corporation named Tidewater Southern Rail-
way Company," since which amalgamation the said last-
named company has been and now is a railroad corporation
duly organized under the laws of this state, with its principal
place of business in the city of Stockton, and is the successor
of all the several capital stocks, properties, roads, equipments,
etc., of the said The Tide Water & Southern Railroad Com-
pany and of said The Tide Water & Southern Transit Com-
pany, respectively, and that the purposes for which the said
companies were formed were the same, and that by virtue of
said amalgamation and consolidation the plaintiff, on or about
the eleventh day of March, 1912, "succeeded to and became
the owner of and ever since has been, and now is, the owner
of that certain subscription agreement" hereinbefore set
forth.

It is alleged in the complaint that prior to said consolida-
tion the said The Tide Water & Southern Railroad Company
gave to defendant and defendant received due notice of said
intended consolidation, "and did not dissent or object thereto,
and has, at all times, acquiesced therein and consented
thereto." That at all times since the subscription of defend-
ant for stock in said The Tide Water & Southern Railroad
Company, and continuously thereafter to March 11, 1912, the
said The Tide Water & Southern Railroad Company was at
all times ready, able, and willing to deliver to defendant the
said stock in the said The Tide Water & Southern Railroad
Company, and that since said consolidation the said The Tide
Water & Southern Railroad Company and The Tide Water
& Southern Transit Company and plaintiffs have, and each of
them has, at all times been and are now and is able, ready,
and willing to deliver to defendant the said stock in said Tide
Water Southern Railway Company. It is further alleged
that on November 14, 1911, the said agreement to purchase
stock was accepted by said The Tide Water & Southern Rail-
road Company, "and it and plaintiff, and each of them, have
duly performed all of the conditions of said subscription
agreement to be performed by them to this time." "That
said agreement, constituting new articles of association or

incorporation, referred to in paragraph III of the original complaint on file herein, provided that all stockholders in each of said constituent corporations, to wit: The Tide Water & Southern Railroad Company and The Tide Water & Southern Transit Company should forthwith and *ipso facto* be and become stockholders in the plaintiff corporation to the same extent and in the same amount as they and each of said stockholders respectively held stock in either of said constituent corporations respectively at the time of the consummation of the aforesaid consolidation." That prior to the commencement of the action, Tidewater Southern Railway Company demanded payment of the defendant of the foregoing mentioned amounts. That defendant has not paid the said sum of two thousand five hundred dollars, nor any part thereof, and the whole is due and unpaid. That defendant did not make, execute, or deliver to plaintiff or The Tide Water & Southern Railroad Company the two thousand five hundred dollar note referred to and mentioned in said subscription agreement, or any note, or any writing other than said subscription. Wherefore plaintiff prays judgment, etc.

A general demurrer to the complaint was overruled and defendant answered: Denied on information and belief the averments in the complaint as to the organization of the various corporations and their consolidation and the facts in relation thereto. Denied that plaintiff succeeded to or became the owner of said subscription agreement. Denied that prior to said consolidation or at any time or at all the said The Tide Water & Southern Railroad Company "or anyone else gave to defendant, and defendant received, due or any notice of said intended alleged consolidation or amalgamation of the said The Tide Water & Southern Railroad Company with the said The Tide Water & Southern Transit Company, and denies that defendant has, at any or all times, acquiesced therein or consented thereto." Denied that said companies or either of them had, as alleged, or at all, been or now is ready, able, or willing to deliver to defendant the said stock in the said The Tide Water & Southern Railroad Company. Denied that on or about November 14, 1911, or at any other time or at all, defendant "subscribed or signed the agreement set forth in paragraph IX of said complaint." Denied that the plaintiff, Tidewater Southern Railway Company, demanded payment from defendant of the amount mentioned

in the complaint, or any part thereof, and denied that the said sum or any sum, principal or interest, is now due or owing from defendant to plaintiff.

By an amendment to the answer, defendant further denied that either of said companies has ''duly or at all performed all or any of the conditions of said subscription agreement to be performed by them to this time or at all.'' Denied that by the agreement constituting new articles of association or incorporation referred to in the complaint, all or any of the stockholders in each of said constituent corporations, or either of them, ''should forthwith, or otherwise or at all, or *ipso facto* or otherwise or at all be, or become stockholders in the plaintiff corporation to the same extent or any extent, and in the same amount or in the same amount, as they or each or any of said stockholders respectively held stock in either of said constituent corporations respectively at the time of the consummation of the alleged consolidation, or otherwise or at all.''

For further and separate answer, alleges: ''That the only contract or agreement to purchase stock that this defendant ever made with said The Tide Water & Southern Railroad Company was a conditional contract wherein and whereby said defendant had the right to return the stock mentioned in said contract at any time within ten (10) months after receipt thereof, and receive back his note or cash, and that said subscription contract was in the words and figures following, to wit'': (Then follows a copy of the contract as set out in plaintiff's complaint). And it is alleged:

''And that as a part and portion of said contract, and as the consideration for entering into said contract on the part of the defendant, there was, on said 14th day of November, 1911, indorsed on the back of said contract, and signed by the sales manager, the following:

'' 'Nov. 14/11.

'' 'On ten days' notice ten months after date to The Tide Water & Southern Railroad Co., bearer of this contract No. 9489, can return the within named stock and receive his note back or cash back or pay note and keep stock.

'' 'TIDE WATER & SO. RAILROAD CO.

'' 'By FRANK AVERY,

'' 'Sales Mgr.'

"And that said defendant would not have entered into any contract or agreement to purchase any stock whatever from said The Tide Water & Southern Railroad Company had not said sales manager, as a part of said contract and as the consideration therefor, moving to said defendant, signed the said contract above mentioned."

In addition to the findings of the court in accordance with the averments of the complaint relating to the organization and consolidation of the several companies named and the capitalization as therein alleged, and the purposes for which said companies were organized and that plaintiff succeeded to and became the owner of all the interest of The Tide Water & Southern Railroad Company in and to said contract mentioned in plaintiff's complaint, the court found that it is not true that prior to the consolidation of the said companies the said The Tide Water & Southern Railroad Company gave to defendant, and defendant received, due notice of said intended consolidation. "It is true that defendant did not dissent or object thereto, but it is not true that defendant has at all or any times acquiesced therein or consented thereto." That it is true that at all times since November 14, 1911, to on or about March 11, 1912, the date of said consolidation, the said The Tide Water & Southern Railroad Company was at all times able, ready, and willing to deliver to defendant the said stock in said company mentioned in the agreement set forth in plaintiff's complaint, and its certificate or certificates therefor; that since said consolidation of said The Tide Water & Southern Railroad Company and The Tide Water & Southern Transit Company, the said plaintiff has been at all times, and now is, able, ready, and willing to deliver to defendant stock in said Tidewater Southern Railway Company, and its certificate or certificates therefor

That it is true that on or about November 14, 1911, defendant signed "a certain document in writing wherein he agreed to subscribe for two thousand shares of the common stock of the said The Tide Water & Southern Railroad Company, a corporation, and agreed to pay therefor the sum of two thousand five hundred dollars, by giving his note upon the delivery to him of the certificates for said two thousand shares, but that said agreement to purchase stock was a conditional contract wherein and whereby said defendant had the right to return the stock mentioned in said contract at any time within

ten months after receipt thereof, and receive back his note or cash, and that said subscription contract was in the, words and figures following, to wit: [Then follows the contract as set out in the answer, with the indorsements thereon, signed by Frank Avery, as hereinabove shown.]   That it is true that said defendant would not have entered into any contract or agreement to purchase any stock whatever from said The Tide Water & Southern Railroad Company had not said sales manager, as a part of said contract and as the consideration therefor, moving to said defendant, signed the said contract above mentioned.''

"That it is not true that said agreement to purchase stock was on the fourteenth day of November, 1911, or at any time or at all, accepted by the said The Tide Water & Southern Railroad Company; but the whole of said contract, including the said portion of said contract indorsed on the back of the duplicate above mentioned, was never submitted to nor presented by said sales manager to said corporation last named and was never accepted by said corporation; and by reason thereof, no contract or agreement was ever entered into between said The Tide Water & Southern Railroad Company, a corporation, and the said defendant; it is not true that it, said The Tide Water & Southern Railroad Company, and plaintiff or either of them, have duly or otherwise performed all or any of the conditions of said subscription agreement to be performed by them to this time."

That it is true that by the provisions of the agreement or consolidation referred to in the complaint, all of the stockholders in each of the constituent corporations of said consolidated corporations "should forthwith and *ipso facto* be and become stockholders in the plaintiff corporation to the same extent and in the same amount as they, and each of said stockholders, respectively held stock in either of said constituent corporations respectively at the time of the consummation of the aforesaid consolidation.''.

That it is true that prior to the commencement of this action, plaintiff Tidewater Southern Railway Company demanded payment from defendant of the foregoing mentioned amounts; that it is true that the defendant has not paid the principal, two thousand five hundred dollars, and interest thereon, and it is true that defendant has not paid any part thereof.

That it is true, also, that defendant did not make, execute, or deliver to plaintiff or The Tide Water & Southern Railway Company the two thousand five hundred dollar note referred to and mentioned in the agreement set forth in the complaint, or any note or any writing other than said agreement.

As conclusions of law, the court found that the defendant is entitled to judgment against plaintiff and for his costs of suit.

There was evidence sufficient to support the findings; that the defendant had no notice of the consolidation referred to in the complaint or that the plaintiff corporation was the result thereof, and that defendant did not consent to or acquiesce in said consolidation; that the contract signed by defendant was indorsed by the sales manager of the Tidewater & Southern Railroad Company in the terms as shown by copy thereof, and that said indorsement formed a part of the contract entered into by defendant and as the consideration therefor, and that defendant would not have entered into any contract to purchase said shares had not the sales manager signed the contract as above mentioned; that neither of said companies has duly or otherwise performed all or any part of the conditions of said subscription agreement referred to in the answer to be by them performed.

Defendant testified that he refused to sign the proposed subscription agreement in its then form, and on his refusal the sales manager, Avery said: "Well, I will send this whole thing in (including the indorsement) and they can accept it or reject it as they see fit," and the defendant said: "All right; with that I will sign it." He further testified that he was never notified by The Tide Water & Southern Railroad Company that his subscription was accepted; that he was never offered any shares of its stock nor did anyone ever tender or offer to him any shares of the plaintiff company until counsel for plaintiff at the trial introduced and tendered two thousand shares of said company's stock. He testified further that he visited the office of The Tide Water & Southern Railroad Company at Stockton "within the ten months after November 14, 1911," and saw the secretary, who knew "what he wanted to find out about," but was told that the president, Mr. Bearce, for whom he inquired, was not there; that he then went to San Francisco, to the office of the company there, but failed to meet Mr. Bearce, and was

never thereafter in communication with the company until
he received a letter introduced in evidence by plaintiff.   This
was a letter dated April 6, 1914, written by plaintiff's attor-
neys calling defendant's attention to the contract of Novem-
ber 14, 1911, informing him that plaintiff is the successor in
interest of all the property of The Tide Water & Southern
Railroad Company and calling upon him to pay the obligation
of November 14, 1911.   To this letter defendant's attorney
made answer by defendant's instructions: "That the terms
of the subscription were never complied with by the company;
the stock was never delivered to Mr. Merz, no demand was
ever made on him for payment of his subscription or any part
of it.   Mr. Merz understood that the subscription was can-
celed."   Some further fruitless correspondence ensued, and
on November 9, 1914, three years after the subscription
agreement was signed, the complaint in this action was filed.

Mr. Bearce, president of plaintiff corporation, who was also
secretary of The Tide Water & Southern Railroad Company
when this subscription agreement was signed, testified that
Avery was a stock salesman of the latter company in November,
1911; that he was furnished with subscription blanks and
literature which were to be made in triplicate, and "was sent
out to solicit subscriptions for that company"; that the agree-
ment set forth in the complaint was ·sent in to the office and
recorded in the subscription book in November, 1911; that he
loaned Avery two hundred dollars "on account of his com-
mission for this sale"; that these subscriptions were always
considered as accepted when sent in, and that there was a
form of letter which was sent out thanking the subscriber;
(there was no evidence that defendant received any letter
acknowledging receipt of the agreement and he testified he
never received from the company any notice of any kind);
the witness testified that the salesmen, of whom there were
thirty, were under his charge; "that agents could sell on time
or partial payments; in fact, probably four-fifths of the stock
was sold on partial payments."   He testified that the writing
on the back of the agreement set out in the answer "is Avery's
handwriting."   "The Court: Q. Did you, when you sent
your agents out, give them any written instructions in regard
to their authority to sell stock?   A. No; when they went
to work we gave them a prospectus outlining the proposition
and we gave them a lot of indorsements from Stockton and

Modesto—different bankers. The Court: Q. I asked you if they had any written instructions. A. No, except the written contract. There was never any resolution passed other than a general resolution giving me the complete charge of the general management, the handling of the business—charge of the whole company. The Court: Q. Of the sale of the stock and management of everything concerning it? A. Yes, sir; I have not got that written contract here. The Court: Q. Did that written contract provide their powers as agents? A. Well, they were entitled by that contract— The Court: Q. Just answer that, yes or no. A. Yes, they couldn't make any alterations. The Court: Q. You had that in there? A. Yes. The Court: I think that contract ought to be admitted in evidence. Mr. Chester: If there is such a contract we will get hold of it and mail it to you. The Court: He says there was such a contract. A. There were with agents; not with Avery in particular; most of them we had contracts with." The contract was not produced and no other evidence was given upon the question of Avery's authority or instructions. The witness testified further that Avery "turned in about fifty thousand dollars worth of business. I cannot remember how many of these little documents he sent in. We sold a million dollars worth of stock and about two thousand five hundred subscribers; if a selling agent used up one book he would get another one. . . . As the subscriptions were received in the office they were entered in this book, and from there they were transferred to a ledger."

Appellant states in its brief: "There is only one question presented, and that is whether or not defendant executed the subscription agreement above referred to," the one set out in the complaint. If this were the only question, there could be but one answer, for it is admitted that defendant signed this agreement. Realizing, however, that there is something more in the case, defendant takes up the question of "the effect of the writing upon the back of the duplicate [given defendant], which was not embodied in the subscription agreement sent to the company."

The position taken by appellant is that "in cases of subscriptions for stock any contract, written or oral, which is not made a part of the contract filed with the company and is thereby kept from the knowledge of the other stockholders, is a constructive fraud on the other stockholders and is void,

and that the subscription agreement filed with the company will be enforced as if the collateral or so-called secret agreement had not been made.'' It is claimed that this precise question was decided in *Quartz Glass & Mfg. Co.* v. *Joyce,* 27 Cal. App. 523, [150 Pac. 648]. That case was cited by this same appellant wherein it was plaintiff in the action against one Vance, reported in 31 Cal. App. 503, [160 Pac. 1097], wherein it was pointed out that in the Joyce case ''the question involved was the validity of a stock subscription agreement by the terms of which the promissory note given for the purchase price of the stock was to be paid out of dividends to be thereafter declared by the corporation. The court held that this practically amounted to a gift of the stock in violation of the provision of section 359 of the Civil Code, and that the said agreement of the parties having that effect was therefore void.'' It is true that the court in the Vance case referred to the rule ''that secret collateral agreements as to stock subscriptions, by which the subscriber gains an advantage over other subscribers, are void, for the reason that such secret advantages are in the nature of a fraud upon subsequent subscribers and upon persons who afterward become creditors of the corporation.'' It was shown in the Joyce case that the principle did not apply for reasons there given, among others, equally true in the present case, that it did not appear that there were other subscribers who could have been defrauded by the plaintiff's reliance upon the respondent's subscription, nor did it appear that there was any subsequent creditor of said corporation who could or did rely thereon in dealing with the said corporation, nor was it shown that there was any secrecy contemplated or connived at by the respondent in the making of the collateral agreement ''by which he was permitted within ten months thereafter to cancel his subscription by recalling his note.'' Nor did it appear that the respondent ''had any knowledge of the fact that the authorized agent of the corporation failed to also indorse such agreement upon the original subscription which said agent retained on behalf of the corporation.'' The court said in the Vance case: ''Whatever secrecy there was in respect to this agreement was imparted entirely by the corporation itself through the act or neglect of its authorized agent; and this being so, and no rights of subsequent subscribers or creditors being involved in the case, it would be a manifest fraud upon the defendant

to permit the corporation to take advantage of its own wrong by repudiating its agreement while enforcing the defendant's note, which was evidently given only because of the reservation in said agreement permitting its recall.'' The court also in that case cited the case of *Schulte* v. *Boulevard Gardens Land Co.*, 164 Cal. 464, [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582], quoting the following language: ''The right to return the stock and recover the sum agreed to be paid upon such return was a material and indivisible part of the consideration upon which the plaintiff agreed to become a stockholder. As between the parties, it would be manifestly unjust to permit the corporation to retain the money paid by plaintiff and at the same time repudiate the promise which it gave in exchange for the money. The obligation to pay upon the return of the shares the sum agreed to be paid is not to be viewed as a new undertaking arising after the plaintiff has assumed the relation of stockholder. The sale to plaintiff was conditional. He never became a stockholder except subject to the qualification that he might return his shares upon the stipulated terms.''

In the Vance case the facts were, as stated in the opinion, that ''on December 14, 1911, the defendant executed a subscription for five hundred shares of the capital stock of the Tidewater Southern Railroad Company, for which he agreed to pay $625 on or before ten months after date, giving his promissory note for that amount. The authorized agent of the corporation who solicited and received the subscription had two copies thereof, one marked 'original' and the other 'duplicate,' both of which were signed by the defendant and the agent on behalf of the corporation, the original being retained by him for the company and the duplicate being delivered to the defendant. On the back of the duplicate the following memorandum was written: 'Dec. 4, '11. Ten months after date if holder of this contract is for any reason dissatisfied we agree to return note or cash equivalent.— H. C. Coffin, Tidewater Southern Railroad Co.' This writing was not indorsed on the back of the original subscription retained by the agent for the company. Within ten months of the date of his subscription, the defendant requested the return of his note, which request the corporation refused to comply with, but, on the contrary, transferred the note to the plaintiff herein, who brought this suit. The defendant pleaded the foregoing facts by way of defense to the action,

and upon proof of the same, judgment went in his favor.''
The judgment was affirmed.   The action was brought upon
the promissory note, and therein differs from the facts in the
present case, in which it appeared that no note was  ever exe-
cuted and no shares ever issued until the suit was brought,
when the plaintiff came into court and made tender thereof.
The Vance case differs from the present case, also, in that the
defendant in that case, within ten months of the date of the
subscription, requested the return of his note.   In the present
case the defendant made an effort to  ascertain  something
about the matter within ten months but saw no one authorized
to act with reference to it.

It will be noted that the subscription contract contemplated
payment for the shares by the execution of a promissory note,
which for some unexplained reason he was never called upon
to execute and never did execute.   The indorsement on the
back of the contract, it is true, contemplated the giving by
defendant of notice to The Tide Water & Southern Railroad
Company that he desired to return the stock ''and receive his
note back or cash back or pay note and keep stock.''   It seems
to us that treating the indorsement as an indivisible part
of the contract, defendant lost none of his rights by not giving
the notice contemplated in the indorsement, and that consid-
ering all the facts of this case and the facts upon which the
Vance case was decided, the latter case is here applicable.

A somewhat similar question as here involved was before
this court in *Tidewater Southern Railway Company* (the same
plaintiff as here) against *Harney*, 32 Cal. App. 253, [162 Pac.
664].   In that case the defendant subscribed in writing for five
hundred shares of the stock of the Tidewater & Southern Rail-
road Company, for which she agreed to pay five hundred dol-
lars.   The subscriptions were made out in triplicate, as in the
present case, and at the time of subscribing the defendant exe-
cuted her note for five hundred dollars for said stock.   The
duplicate subscription, retained by defendant, had written on
the back thereof the following: ''July 25-11.   Ten months
from date, if holder of contract wishes, we agree to take said
stock off purchasers hands at the purchase price of $1.00 per
share—Tide Water & Southern R. R. Co. by R. U. Morey,
Sec. Dept.''   This was not written upon the original subscrip-
tion retained by the company.   Some time after the consoli-
dation of the companies as referred to, and after the organ-

35 Cal. App.—27

ization of the plaintiff corporation, the action was brought on said promissory note. In the opinion written by Mr. Justice Burnett, we held that the main features of the case were similar to those of the Vance case, *supra*. It was also held that this collateral agreement was the controlling consideration for the note and could properly be shown by parol. It was also held that "the transaction must be considered, of course, in its entirety, and the effect [of the conditional obligation] is the same as though the contract were fully expressed in one instrument." Attention is also called to the fact, as exists in the present case, that the interests of no stockholders or creditors are involved. It was also held, and we are satisfied should be so held in the present case, that "appellant should not be permitted to deny the authority of the agent to enter into such conditional contract. The agents were authorized to sell stock; they had the blank subscription book. In the sale of the stock they represented, therefore, the corporation. The purchaser was not warned nor put upon inquiry as to any limitation to the authority of the agent in receiving subscriptions. The purchaser had the right to assume that the salesman was authorized by the corporation to do those legal acts which the nature of his employment seemed to warrant. The agent, in other words, was ostensibly clothed with unlimited authority, and upon familiar principles appellant should not be heard to disavow and repudiate the contract made by him." It is further shown in the opinion that there was some evidence justifying the inference that Mr. Bearce, the president of the corporation, had knowledge of this conditional agreement, and while that fact lends support to the conclusion reached, it was not the essential feature upon which the decision rested. Speaking further of the agent, the court said: "It was the duty of the agent to make the proper indorsement on the 'original' subscription. If he had done so, the corporation would have had through that channel actual knowledge of the entire contract. But by the fraud of the agent the said indorsement was not made, and as far as respondent is concerned, the case must be viewed then as though said indorsement had been made and acquiesced in by appellant; for the act of the agent under the circumstances is the act of the principal, and the latter must suffer the consequences of the agent's failure to do as he agreed. This particular phase of the case is discussed

with great learning by Mr. Justice Lorigan in *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, [41 L. R. A. (N. S.) 529, 124 Pac. 704], wherein is an elaborate exposition of the doctrine that 'a principal is liable to third persons not only for the negligence of its agents in the transaction of the business of the agency, but likewise for the frauds, torts, or other wrongful acts committed by such agent in and as a part of the transaction of such business.' . . . It was manifestly the duty of the agent herein to file the original of the actual agreement of the parties with the corporation. He was acting directly within the scope of his authority when he secured the contract and filed it with the principal, and his fraudulent omission of a material part of the subscription must be regarded in the same light as would be a fraudulent addition of a material term. The result is that the status of the parties was fixed as though the agent had done his duty, and appellant is deemed to have ratified the conditional contract.''

It is also held in that case that there was no merit in the contention of plaintiff that the defendants should have resorted to an independent action for damages to enforce her claims under the contract, for the reason that ''the consideration for the note was involved, and of course that can be set up as a defense to an action on said note. Or if we view the element of fraud to which we have adverted, attention may be directed to the established and permissible procedure as set forth in *Field* v. *Austin,* 131 Cal. 379, [63 Pac. 692], and other cases, recognizing three methods by which a party defrauded may obtain relief as follows: (1) Cancellation or rescission, whereby the defrauded party procures an instrument to be set aside and himself to be restored to his original position; (2) affirmative relief by an action to recover a pecuniary compensation for the injury sustained by the fraud of the defendant where no cancellation is necessary as the basis of such recovery, and (3) defensive relief (which is in the present case resorted to), whereby the fraud is set up by way of defense to defeat an action brought to enforce an apparent obligation or liability.''

We are satisfied with the conclusions reached by the trial court, and the judgment is, therefore, affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 26, 1917, and the following opinion then rendered thereon:

THE COURT.—Appellant has petitioned for a rehearing in the above-entitled cause after decision rendered by this court affirming the judgment of the lower court.

The material facts involved in the controversy clearly appear in the former opinion, and need not here be reiterated. In that opinion it was said: "It seems to us that treating the indorsement as an indivisible part of the contract, defendant lost none of his rights by not giving the notice contemplated in the indorsement, and that considering all the facts of this case and the facts upon which the Vance case was decided, the latter case is here applicable." This language, it is claimed, lends itself to some confusion, and petitioner herein takes the position that by the Vance and Harney cases the option on the back of the duplicate must be regarded as a part of the contract (and those cases so hold), binding upon both parties, though said option was never communicated to petitioner, that thereupon it became the duty of Merz, if he desired to terminate this relationship, to so notify the corporation within the ten months specified in the said option, and that, therefore, the court is in error if it intends to say that Merz need not so notify the appellant corporation within the said time.

Even conceding that this contention of petitioner is correct, we are of the opinion, after a very careful re-examination of the record, that petitioner is not entitled to a rehearing, and that the result reached by the trial court was a correct one.

It is to be remembered that upon being solicited for a subscription by appellant's agent, Avery, Merz declined to enter into any agreement unless he was given a ten months' option to return his stock and receive his money back. It is at once apparent that the negotiations between Avery and Merz constituted at least one of two things; either they amounted to an offer from the company through its agent to Merz or constituted an offer from Merz to the company.

If the former be the true aspect in which to view the transaction, then we should indeed have a similar condition to that existing in the Vance and Harney cases; namely, that Avery,

as agent, had authority to enter into the contract, as modified by the option, and that, therefore, said contract was completed, and Merz made a stockholder, upon the signing of said contract. Viewing the case in this light there would be no question but that Merz would have to exercise his option of returning his stock within the period stipulated in said option; that is, ten months from the date of the signing of the contract, and that not having done so, he has no standing in court.

But appellant overlooks the effect of Merz's testimony as to the negotiations, which is the only evidence upon this phase of the case. Merz was asked: "Q. Now, just state to the court what was said by Mr. Avery with regard to the acceptance or nonacceptance of this contract, and what, if anything, Avery was going to do with this contract—whether or not he was to submit it to the company, as was stated." And his answer was: "A. He stated that it was customary to make a payment on this, these subscription agreements for stock, and I refused to make that, and he says, 'Well, I will send this whole thing in and they can accept it or reject it as they see fit,' and I says, 'All right, with that I will sign it.'" This shows clearly that in taking the contract, Avery did not purport to act with authority to bind the company or to assume the responsibility of accepting for the company a subscription on the conditions imposed by Merz, but that both parties understood that Merz's proposition was an offer to be submitted to appellant for such action as it might take. Therein does this case differ substantially from the Vance and Harney cases, where the offer came from the agent acting and purporting to act within the apparent scope of his authority. And in this connection it is now settled that where the proposition or offer does not come from the corporation, but from the subscriber, the subscription must be accepted by the corporation. Appellant then argues that "it has been repeatedly held that the subscription is accepted by the corporation when it makes an entry thereof in its books, spends money on the faith of it, or otherwise treats the subscription as being accepted. (Clark and Marshall on Private Corporations, sec. 439b, p. 1366.)" Even assuming this to be a correct statement of the law of this state, it has no application here, for the very obvious reason that the offer or proposition of Merz was never submitted to appellant. The entry upon its stock

book, which it is claimed constitutes an acceptance, was of the original proposition made by Avery to Merz, minus the option feature, and was not the proposition submitted by Merz and intended by him to be submitted to appellant. Merz's proposition, as already pointed out, was fraudulently retained by Avery. Obviously, then, no contract was entered into. The corporation, because of its agent's fraud, received and thereupon accepted a proposition essentially different from that submitted by Merz, a proposition that had previously been refused by him. No mutual rights were ever created, and so none could be lost. Viewed in this light, it is a sound conclusion that Merz lost no rights by not giving the notice contemplated in the indorsement.

Whatever is said in our former opinion regarding the application of the Vance and Harney cases to the instant case must likewise be understood in the light of what is here said. There is nothing at all inharmonious between those cases and this.

The petition for rehearing is denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 24, 1918.