[Civ. No. 3428.   Second Appellate District, Division One.—February 16, 1921.]

JOHN T. FULMELE, Appellant, v. LOS ANGELES INVESTMENT COMPANY (a Corporation), Respondent.

[1] CONTRACT — FRAUD — ELECTION OF REMEDIES. — A party who by fraudulent means has been induced to enter into a contract may, upon discovering the facts constituting fraud and by prompt action to that end, rescind the contract, or he may affirm the contract and recover according to its terms.

51 Cal. App.—27

[2] CORPORATIONS—AGREEMENT TO REPURCHASE STOCK—ENFORCEMENT OF CONTRACT.—A contract by a corporation to redeem and repurchase "at any time" shares of stock sold by it may be enforced if the purchaser elects to take advantage of such option within a reasonable time.

[3] ID.—CONTRACT TO PURCHASE STOCK—RESCISSION FOR FRAUD—DEFENSES OF LACHES AND RATIFICATION—SUFFICIENCY OF EVIDENCE. In this action against a corporation to rescind a contract of purchase of its stock on the ground of fraud, the court is held to have been justified in sustaining the defenses of laches and of ratification.

[4] ID.—VOTING OF STOCK—RATIFICATION.—One who seeks to place himself outside of the pale of the corporation under a claim of right to rescind the sale of the stock to him by the corporation should not be permitted to enforce such right to rescind while at the same time exercising his voting rights as a stockholder.

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

Warren D. Isenberg and W. A. Marin for Appellant.

O'Melveny, Millikin & Tuller and Flint & McKay for Respondent.

CONREY, P. J.—On the nineteenth day of December, 1912, respondent sold to appellant 361 shares of its capital stock and issued a certificate therefor in consideration of the sum of $1,498.15 then and there paid. The complaint alleged two classes of facts which induced him to enter into this transaction; first, that respondent represented and stated that appellant could at any time demand and respondent would, upon such demand being made, redeem and repurchase from plaintiff said shares of stock and return and repay to plaintiff the consideration paid therefor; also, that respondent made sundry representations of fact which are set out in the complaint, each and

2. Right of corporation to purchase its own shares of stock, notes, 17 Ann. Cas. 1261; Ann. Cas. 1914B, 1016; 61 L. R. A. 621; 25 L. R. A. (N. S.) 50; 30 L. R. A. (N. S.) 694; 44 L. R. A. (N. S.) 156.

all of which were false, and by respondent known to be false, but which were believed and relied upon by appellant. The complaint further alleged that upon about the first day of May, 1913, and on divers dates thereafter, the plaintiff in person demanded of the defendant the return of his money from the defendant, and tendered and offered to defendant said certificate of stock and everything of value received from the defendant; that the defendant refused to accept said shares and certificate of stock and refused to pay, etc. It was further alleged that on or about the twenty-first day of October, 1914, the plaintiff first learned that said representations so made by defendant and relied upon by plaintiff were false and untrue, and that immediately thereafter plaintiff gave notice in writing of rescission of said agreement for the purchase of said shares of stock. Upon the facts stated in the complaint, appellant prayed for judgment against respondent for the rescission of said contract; for judgment in the sum of $1,498.15 with interest, and generally for equitable relief.

By its answer, respondent denied the making of the promise and representations set out in the complaint, and further pleaded that plaintiff had notice and knowledge of the matters on which he bases his right to rescind at least as early as January 1, 1914, and that plaintiff has been guilty of laches, and on that ground should not be allowed to recover, and, further, that by voting the stock at the annual meeting of stockholders of January, 1915, the plaintiff ratified the sale.

The findings of the court recite that at the trial the plaintiff commenced to submit his evidence, and in part did submit evidence, in support of the allegations contained in the several subdivisions of paragraph V and in paragraph XIV of his amended complaint, which are the allegations referring to said promise and representations and relating to the offers and demands alleged to have been made by the plaintiff as above stated. The findings further state that thereupon the court of its own motion ordered that before proceeding further with plaintiff's case the issue of laches and the issue of ratification be tried; that both parties submitted their evidence on said issues, which, after argument, were submitted to the court for decision. The court thereupon made its decision in the

form of findings of fact and conclusions of law, whereby it was determined that the plaintiff take nothing by this action. Judgment was entered accordingly. From this judgment the plaintiff has appealed.

It is evident that in the trial of the case the court regarded the action as one for rescission of the sale upon the ground of fraud, and disregarded those allegations of the complaint under which appellant now claims that by the terms of the contract of sale he had the absolute right to return the stock to the defendant at any time and have returned to him the consideration paid. It does not appear that appellant objected to this construction of the nature of the action, nor could he well do so. The two remedies were inconsistent. [1] A party who by fraudulent means has been induced to enter into a contract may, upon discovering the facts constituting fraud and by prompt action to that end, rescind the contract, or, on the other hand, he may affirm the contract and recover according to its terms. Having brought this action for rescission, as by his complaint, and the relief demanded therein, he distinctly appears to have done, he waived his right to recover upon the contract itself, and cannot in this action enforce any of its terms. If at the trial the plaintiff had insisted that his action was based upon the contract as well as upon his claimed right of rescission, the defendant might well have required that plaintiff elect upon which of these two inconsistent causes of action he would go to trial.

[2] We do not doubt that a contract of resale may be made in connection with a contract of sale of shares of stock, or any other property, and that even a contract to redeem and repurchase such property "at any time" may be enforced if the purchaser elects to take advantage of such option within a reasonable time. (*Schulte* v. *Boulevard Gardens Land Co.,* 164 Cal. 464, [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582]; *Brooks* v. *Trustee Co.,* 76 Wash. 589, [50 L. R. A. (N. S.) 594 et seq., 136 Pac. 1152].) But as we have seen, that was not the remedy demanded by the complaint herein, or by appellant at the trial. Viewing the action, therefore, as one to rescind a contract upon grounds of fraud, and assuming that the evidence if fully presented would have established the alleged fraud in the contract and sale, the merits of

this appeal rest wholly upon the view which should be taken of appellant's contention that under the evidence introduced he was not guilty of laches nor did he ratify the contract after discovery of the facts constituting the fraud.

Briefly stated, the alleged false representations were that the stock of respondent corporation was worth ten or fifteen dollars a share; that the company had a guarantee fund of about $200,000 deposited in the Globe Savings Bank as a trust fund to be used in buying back the capital stock of the company from purchasers thereof; that said fund was sufficient to protect all purchasers buying said stock from loss; that plaintiff could rely upon the defendant repurchasing the stock at any time plaintiff should desire to resell it; that the corporation was paying certain large annual dividends amounting to twenty-eight per cent of the par value of its capital stock, which dividends were less than it was able to pay; that a certain published statement of the corporation's assets and liabilities was among the representations shown to and relied upon by appellant in purchasing said stock.

In June, 1913, appellant went to respondent's place of business and without any trouble resold to respondent 121 shares of stock of the corporation which he had purchased at the same time when he purchased the 361 shares. It appears from his testimony that early in the following month, or later in the same month, he requested respondent to accept from him the 361 shares and return his money to him under the contract. Respondent's officers told him that he would have to sign a card and take his turn and that he would be notified when his turn came; that the president of the corporation said to appellant: "If you have got to have money, you can take your stock down to the exchange and get $2.50 for it, but I would not advise you to do that because you paid $4.15, and we will have money for you in a very short time"; that it would not be many weeks or months before appellant could have his money. A day or two after that interview appellant left the state of California and was absent more than a year. In the fall of 1913 there occurred what is commonly known as a "run" on the Globe Savings Bank, and before the end of that year appellant received information not only of the run on the bank, but also of the fact that an asso-

ciation of stockholders of defendant corporation giving itself the significant title of a "protective association" had been organized. Before the end of the year 1913 he had sent to the protective association a proxy to be voted at the annual election of 1914. Having returned to Los Angeles about September, 1914, appellant attended meetings of the protective association at which the troubled affairs of the corporation were discussed. On the twenty-first day of October, 1914, he served upon respondent a notice of rescission (exhibit "A" of complaint), wherein he disclaimed any right, title or interest in the shares of stock and demanded the return of the money paid by him therefor, all on the ground that the contract was made upon false and fraudulent representations of respondent, made as an inducement to him to enter into the contract of purchase of the stock. Nevertheless, appellant afterward, on the twelfth day of November, 1914, signed and executed a proxy authorizing the persons named therein to represent him and vote his stock at the annual meeting of the stockholders to be held in January, 1915, and under that proxy said shares were voted.

When in June, 1913, appellant was informed by the officers of the corporation that he could not have his stock redeemed or resold forthwith, and that for the satisfaction of his demand he must await his turn, that fact alone was sufficient to warn any reasonable man that very probably the representation theretofore made to him that a fund of $200,000 was on deposit in bank as a trust fund to be used in buying back the shares of stock of small stockholders was untrue, and that sundry other of the representations upon which he had relied would prove to be untrue. Not only did he obtain further information of the same tendency while he was absent from California, but upon his return in September, 1914, he accumulated much further information of like character. Yet he waited until October 21st before attempting to rescind his contract upon grounds of fraud, and until December 8, 1914, before filing his original complaint in this action. In the meantime, although he had disclaimed all interest in the stock, he gave a proxy whereby he caused it to be voted at the next annual meeting of stockholders.

[3]  Upon these facts we are satisfied that the court was justified in sustaining both and each of said defenses of laches and of ratification.  A party must rescind promptly upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind.  (Civ. Code, sec. 1691; *Marten* v. *Burns Wine Co.,* 99 Cal. 355, [33 Pac. 1107] ; *Brown* v. *Domestic Utilities Mfg. Co.,* 172 Cal. 733, [159 Pac. 163].)  And as to ratification: While the party entitled to relief may either avoid the transaction or confirm it, he cannot do both; if he adopts a part, he adopts all; he must reject it entirely if he desires to obtain relief.  Any material act done by him, with knowledge of the facts constituting the fraud, or under such circumstances that knowledge must be imputed, which assumes that the transaction is valid, would be a ratification.  (Pomeroy's Equity Jurisprudence, 4th ed., sec. 916, p. 1914.)  In the same work, at section 964, it is said: "If the party originally possessing the remedial right has obtained full knowledge of all the material facts involved in the transaction, has become fully aware of its imperfection and of his own rights to impeach it, or ought, and might, with reasonable diligence, have become so aware, and all undue influence is wholly removed so that he can give a perfectly free consent, and he acts deliberately, and with the intention of ratifying, the voidable transaction, then his confirmation is binding, and his remedial right, defensive or affirmative, is destroyed."  In *Marten* v. *Burns Wine Co., supra,* wherein the plaintiff sought to rescind a contract of sale to him of shares of capital stock, it appeared that on the same day when the plaintiff discovered the facts constituting the fraud, he was present at a stockholders' meeting of the corporation and voted for the levy of an assessment on its capital stock; that at a later day he attended another meeting of the stockholders, and afterward paid the assessment as levied without objection.  This was held to be in effect an affirmance of the contract, and the plaintiff was not permitted to disaffirm "after having with full knowledge of the fraud dealt with the subject matter thereof under circumstances and to an extent that amount to a ratification."  Replying to respondent's citation of that case on the matter of ratification, appellant seeks

to differentiate that case and the case at bar in this, that there the voting at the meeting of stockholders was for the levy of an assessment, whereas this was only an annual meeting for the election of directors. But it does not require much imagination to realize that an election of a new board of directors of a corporation which is in such condition that its stockholders have deemed it necessary to organize a protective association, is a meeting the result of which may have important consequences to all stockholders. [4] Under such circumstances, one who seeks to place himself outside the pale of the corporation under a claim of right to rescind the sale of the stock to him by the corporation, should not be permitted to enforce such right to rescind while at the same time exercising his voting rights as a stockholder.

The judgment is affirmed.

Shaw, J., and James, J., concurred.