### In re WRIGHT MOTOR CO., Inc.

### BRENNAN v. OLIVER.

(Circuit Court of Appeals, Ninth Circuit. May 12, 1924. Rehearing Denied July 14, 1924.)

### No. 4119.

1. **Bankruptcy ⊜185—Trustee may recover property transferred in violation of laws of state.**

Under Bankruptcy Act, § 70e (Comp. St. § 9654), providing that a trustee may avoid any transfer by the bankrupt of his property which any creditor might have avoided, a trustee may maintain a suit to recover property transferred by a corporation bankrupt in violation of the laws of the state.

2. **Bankruptcy ⊜178(1)—Property transferred by corporation to stockholder held recoverable by its trustee.**

Under Civ. Code Cal. § 309, providing that there shall be no division, withdrawal or payment to stockholders of any part of the capital of a corporation, or reduction of capital stock, except in the manner provided by law, a transaction by which a corporation transferred assets to a stockholder in payment for his stock, which he transferred to an-

---

other stockholder for which the corporation received no consideration, with the result that it could not meet its current obligations and became insolvent, was fraudulent in law, and the property so transferred, or its value, is recoverable by its trustee in bankruptcy.

3. Bankruptcy ⬤⇒305—Decree in suit by trustee to recover assets approved.

In a suit by the trustee of a corporation to recover assets illegally transferred, a decree *held* proper which required defendant to pay such sum as might be required, with the other assets, to pay expenses of administration and all just claims, exclusive of claims of stockholders who participated in the illegal transfer.

Appeal from the District Court of the United States for the Second Division of the Northern District of California; George M. Bourquin, Judge.

Suit in equity by A. J. Oliver, trustee in bankruptcy of the Wright Motor Company, Inc., against James F. Brennan. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 292 Fed. 197.

Oliver, as trustee of the Wright Motor Company, a California corporation, bankrupt, sued defendant, Brennan, to set aside certain transfers of money and personal property and directing Brennan to pay the trustee the value of the property transferred, with interest, and for other relief. After trial, decree was entered in favor of the trustee, and Brennan appealed.

The corporation, which was in the automobile business, was adjudged a bankrupt in May, 1921. The capital stock was $37,500, divided into 375 shares of the par value of $100 each. W. S. Wright was president, and defendant Brennan and one West were directors. In March, 1920, 125 shares of the capital stock were issued to Wright, for which he delivered to the corporation certain assets; 125 shares were issued to Brennan, and 125 shares to West, for which each paid $12,500 in cash.

It is alleged that between June 1, 1920, and November 30, 1920, with the knowledge of the directors, and while the corporation was owing unsecured creditors, Brennan withdrew from the capital and property of the corporation, and the corporation paid to Brennan, $19,572 in cash out of its capital, and that there were transferred to Brennan certain chattels, worth $5,500; that the transfers rendered the corporation insolvent, were without consideration, and were made with intent on the part of the corporation and its officers and directors to hinder creditors, and to protect Brennan from loss as a stockholder. The trustee alleges for a second cause of action that Brennan in addition to the $12,500 in cash paid by him for his stock, advanced the $12,500 paid by West for West's stock and that the shares delivered to West belonged to Brennan; that the withdrawal of the capital was never authorized by the corporation commissioner of California, and was in violation of section 309 of the Civil Code of the state.

Brennan answered, denying allegations of withdrawal of capital or wrongful intent, or that the effect of the transfers was to render the corporation insolvent, and pleaded that the corporation prospered for a time and that in April, 1920, when the corporation was solvent, he agreed to buy at par value the 250 shares which had been issued to Brennan and West; that by written contract dated April 24, 1920, Wright agreed to pay Brennan $10,000 upon the execution of the contract, $2,500, with interest, on May 24, 1920, $1,500 on the 24th day of each succeeding month, until $9,000 was paid, and thereafter $1,750, with interest, on the 24th day of each succeeding month until the full sum of $15,000 and interest was paid; Wright was to run the business, and the title to 249 out of the 250 shares of the corporation agreed to be sold was to remain in Brennan until the whole purchase price was paid and 1 share was to be transferred to Wright as part of the shares which Brennan agreed to sell; that Wright paid Brennan $10,000, also $2,500 on May 21st, and $1,500 on June 24th, but that in July, 1920, Wright neglected the busi-

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ness, and that then Brennan accepted Wright's offer to pay Brennan $5,500 (half the balance of $11,000 remaining unpaid on the contract of April 24th), Wright agreeing to arrange with Warren Shannon, who was the real owner of half the 250 shares, for the payment of $5,500, if Brennan would have the 250 shares transferred to him (Wright); that accordingly 248 shares were transferred to Wright, 1 share transferred to Shannon, and 1 share retained by West; that Wright at different times up to November 10, 1920, paid a total of $5,500 to Brennan; that on July 14, 1920, Wright made a promissory note to Shannon for $5,500, due 30 days after date, secured by a pledge to Shannon of 373 shares of the capital stock and also by bill of sale to Shannon of all the property belonging to the corporation; that Wright and Shannon agreed that 1 share of stock held by Brennan should be transferred to Shannon, who was elected a director on July 14, 1920, in place of Brennan, resigned; that on July 14, 1920, the corporation was solvent and owed very little money; that Wright made no payments on the note of July 14 to Shannon until November 17, 1920, when he paid $900 in cash, and on that same day assigned to Brennan, for the account of Shannon, the equities in certain automobiles which had theretofore been hypothecated for a corporation loan to a bank in San Francisco; that Wright executed to Brennan, for the account of Shannon, a note for $500, which was accepted by Shannon, which, with the assignment of equities, constituted full payment to Shannon of the $5,500 note; that Wright owed all the shares of the corporation from July 14, 1920; that all claims against the corporation in the bankruptcy proceedings, except claims aggregating less than $250, were incurred by Wright after July 14, 1920, when Wright owned all the stock.

James F. Brennan, of San Francisco, Cal. (J. J. Dunne, of San' Francisco, Cal., of counsel), for appellant.

Brownstone & Goodman, of San Francisco, Cal., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Under section 70e of the Bankruptcy Act (Comp. St. § 9654) the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover property so transferred, or its value, from the person to whom the transfer was made, unless he was a bona fide holder for value prior to the date of the adjudication. Recovery of the property, or its value, may be had from whoever may have received it, except a bona fide holder for value; and for the purpose of such recovery any court of bankruptcy, and any state court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction. We think it clear that under that section the trustee in bankruptcy could maintain the present suit to recover property transferred in violation of the laws of the state of California. Stellwagen v. Clum, 245 U. S. 605, 38 Sup. Ct. 215, 62 L. Ed. 507. We therefore turn to the Civil Code of California.

[2] Section 309 of the Civil Code provides that there can be no division, withdrawing, or the payment to stockholders of any part of the capital stock of the corporation, or reduction of capital stock, except in the manner required by law. By the provisions of sections 3439 and 3442 of the Civil Code, transfers made with intent to delay or defraud creditors or others of their demands may be set aside. In Atkinson v. Western D. Syndicate, 170 Cal. 506, 150 Pac. 360, the court considered section 3442 of the Civil Code, which provides that in any case

arising under Code title of "Fraudulent Instruments and Transfers," the question of fraudulent intent is one of fact and not of law, and held that, if a grant is made without consideration by a person insolvent or in contemplation of insolvency, the intent of the grantor becomes immaterial, and the transfer, regardless of the actual intent, is void as to creditors. Baldwin v. Wolff, 82 Conn. 559, 74 Atl. 948. In Garrow v. Fraser, 98 Wash. 88, 167 Pac. 75, a stockholder of the corporation sold his shares to another stockholder and received his pay, not from the purchaser, but from the assets of the corporation. In an action by the assignee of the bankrupt corporation the seller of the shares was held liable to the extent of the value of the shares received. The court cited Mitchell v. Jordan, 36 Wash. 645, 79 Pac. 311, and Thompson on Corporations, § 4926. The rulings were based, not merely upon a liability imposed by statute, but upon the ground that it is a fraud upon the creditors of a corporation to distribute corporate property to stockholders without providing for the payment of debts of the corporation. Sanger v. Upton, 91 U. S. 56, 23 L. Ed. 220; Schulte v. Boulevard Gardens Land Co., 164 Cal. 467, 129 Pac. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013.

It is beyond question that in the transactions under consideration, whereby Brennan attempted to sell his stock to Wright, the corporation did not receive anything for the various payments of money and transfers of property by the corporation to Brennan. The net result was that, by withdrawing the moneys of the company, Brennan got back his money invested in the capital stock. As a fact he took all the money that the corporation had, and the consequence was the corporation was in a position where later it could not meet its current obligations, and as a result creditors would be deprived of rights. Such a distribution of corporate property to a stockholder, without providing for the debts of the company, is a fraud upon creditors of the company, and they may follow the capital stock as far as it can be traced. The evidence is that Brennan said he did not want to be liable to any of the creditors. Evidently he foresaw business failure, and believed it was possible to get out by disposition of his stock in the manner followed. In such a case the law does not require proof of deliberate intent to do a wrong, but will fix a liability, where it is plain that there was knowledge that the withdrawal of the money would result in so depleting the assets of the corporation that it will be unable to conduct its business.

We regard it as very significant that in April, 1920, when the first payment of $10,000 was made to Brennan, the directors loaned $10,000 to Wright and took a note to the corporation from Wright, but made the check for $10,000 so loaned payable directly to Brennan, and that the check was signed by Brennan, treasurer. At that time Wright had no money, and Brennan knew it. The corporation was not doing much business, and Brennan, with knowledge of conditions, wanted to avoid probable liability. But the plan pursued meant taking from the corporate treasury by corporate authority, not only the $10,000 referred to, but taking at subsequent times up to August 31, 1920, moneys aggregating over $18,400, and automobiles and stock on hand, and leaving the

corporation fast drifting to the point where, on February 26, 1921, it made an assignment, and in May went into bankruptcy, with assets of less than $1,000, and with claims amounting to over $9,400 against the estate.

Appellant points to statements in evidence purporting to show the assets and liabilities of the corporation prior to July, 1920. The statements show that in March, 1920, there were assets of $36,300 in excess of liabilities, and that in April there were assets of $34,500 in excess of liabilities. But Brennan knew that included in the April assets was the Wright note for $10,000, the "good will" asset of $5,000 and the leasehold put in at $7,250. Again, he was advised by Wright in the first part of November, 1920, that the bills of the company were not paid, and that there was no money. Yet he insisted on a settlement and on November 13th obtained a transfer of automobiles from the corporation—a transfer for which the corporation received nothing. There was nothing left for creditors; even the capital was depleted. It is said that there were no debts due when the withdrawals were made; but it appears that there were liabilities for some deposits in money that had been made by dealers who had subagencies of the corporation, and that there was a claim for rent and that there was a claim by Wright for salary.

[3] The decree made by the District Court awarded recovery from Brennan in the sum of $4,500, and provided that, after the payment of such sum and costs, the referee should file a report showing the exact amount necessary to satisfy all just claims and reasonable allowances and expenses in the bankruptcy proceedings, and that the trustee should thereupon recover from Brennan the amount shown by such report to be necessary to pay all just claims and reasonable allowances and expenses in the bankruptcy proceedings, and that the trustee should have execution therefor; that if the report showed there was a balance remaining out of the sum of $4,500, after paying all just claims and allowances and expenses, the excess should be paid to Brennan; that Wright should not be allowed any sum claimed by him, but that no decision was made that claims filed in the bankruptcy proceedings in behalf of Wright should not share pro rata in the assets of the estate, other than the amount recovered under the decree.

The appellant objects to the form of the decree upon the ground that it was too uncertain and indefinite. We cannot support such a contention, for obviously it was perfectly fair on the part of the court to make a reference of the 39 claims filed to the referee, to the end that that official might look into the merits of each and every claim. Moreover the court did not have the claimants before it, and could not properly pass upon the merits of the claims.

Decree affirmed.