## ANDREWS v. LYTLE.

District Court, N. D. Iowa, W. D.    August 21, 1928.

**1. Bankruptcy ☞293(2)—Action by trustee in bankruptcy to compel restitution of funds received from bankrupt's estate held within jurisdiction of United States District Court (Bankr. Act, § 70e; 11 USCA § 110(e).**

Action by trustee in bankruptcy to compel restitution of funds received from bankrupt's estate, brought under Bankruptcy Act, § 70e, 11 USCA § 110(e), providing that trustee may avoid any transfer by bankrupt, *held* within jurisdiction of United States District Court.

**2. Bankruptcy ☞293(1)—Action to compel restitution of trust funds received from bankrupt's estate held within equity jurisdiction, and not to show remedy at law.**

Action by trustee in bankruptcy to compel restitution of funds received from bankrupt's estate, which constituted trust fund, *held* not outside jurisdiction of United States District Court, on ground that action was for money judgment and plaintiff's remedy was at law, since administering of trust funds is within equity jurisdiction.

**3. Bankruptcy ☞293(1)—Plea that remedy by trustee in bankruptcy for restitution of bankrupt's funds is at law is not defense matter, but should be availed of by motion to transfer to law docket (Equity Rule No. 22; see title 28, § 723).**

In action by trustee in bankruptcy to compel restitution of funds received from bankrupt's estate, plea that remedy, if any, should be in court of law, is not defense matter, but should be availed of by motion to transfer to law side of calendar, under Equity Rule No. 22 (see title 28, § 723).

**4. Bankruptcy ☞293(1)—Plea that remedy of trustee in bankruptcy for restitution of bankrupt's funds is at law is not jurisdictional question.**

In action by trustee in bankruptcy to compel restitution of funds received from bankrupt's estate, plea that remedy, if any, was at law, is not jurisdictional question.

**5. Bankruptcy ☞303(1)—Defendant, sued for money received from bankrupt's estate, had burden of showing money received for stock sold president of bankrupt company belonged to president, or came from assets not jeopardizing creditors.**

In action by trustee in bankruptcy to compel restitution of funds received from bankrupt's estate, defendant had burden of showing that money received by him in payment for stock sold to president of bankrupt corporation was in fact money belonging to president, and not that of bankrupt company, or at least was paid from assets that would not jeopardize rights of creditors.

**6. Evidence ☞67(3)—Adjudication of insolvency is evidence that may be considered in establishing prior insolvency.**

Adjudication of insolvency is an element of evidence that may be considered in establishing prior insolvency.

**7. Bankruptcy ☞303(5)—Evidence held to show resolution authorizing payment to bankrupt company's president of proceeds of company's property was subterfuge to transfer proceeds to defendant, sued for restitution of bankrupt's funds.**

In action by trustee in bankruptcy to compel restitution of funds received from bankrupt's estate, evidence that financial situation of company was not such as to warrant retirement of preferred stock, and that proceeds of sale of one of company's stations were paid directly to defendant, who had contracted for sale of common stock to president of bankrupt

mpany, showed that subsequent resolution, assed by board of directors, providing that roceeds of sale were to be paid to president to etire preferred stock owned by him, was subterfuge employed by transfer proceeds of sale to defendant.

**8. Bankruptcy ⟨⟩180—Contract for sale of defendant's stock to president of bankrupt company, requiring payment only from net profits, showed parties' knowledge that payment from assets would be illegal against creditors.**

Contract between defendant and president of bankrupt company for sale of defendant's stock to president, providing that payment should not be made from assets of company, but could be made from net profits, and that capital assets could be used to retire preferred stock of president, showed control by parties to contract over entire assets of company, and their knowledge that payment from assets of company would be illegal as against rights of creditors.

**9. Bankruptcy ⟨⟩182—Defendant, sued for restitution of bankrupt's assets, controlling all of bankrupt's stock, could not claim unacquaintance with bankrupt corporation's assets and liabilities.**

In action by trustee in bankruptcy against defendant to recover assets received from bankrupt's estate, defendant, controlling all stock held in name of several directors and being practical owner of close corporation, could not claim that he was unacquainted with affairs of corporation and value of its assets and liabilities.

**10. Pleading ⟨⟩360(4)—Claim of set-off, raised in amended answer, which was stricken, held not before United States District Court.**

Where claim of set-off by defendant, sued by trustee in bankruptcy for restitution of funds of bankrupt's estate, was raised in amendment to answer, which was stricken on motion, leaving original answer standing as filed, no issue was before United States District Court on right of defendant to set-off.

In Equity. Suit by R. J. Andrews, trustee in bankruptcy for the Pollard Oil Company, against Charles F. Lytle. Judgment for complainant, with directions, and exceptions allowed to defendant.

Maennel & Gunnell, of Sioux City, Iowa, for complainant.

Burgess & Gill, of Sioux City, Iowa, for defendant.

DEWEY, District Judge. [1] Defendant claims that this court is without jurisdiction to determine the matters in controversy, as there is no showing of diversity of citizenship. The action, however, is brought under section 70e of the Bankruptcy Act (11 USCA § 110 (e), providing that the trustee may avoid any transfer by the bankrupt,

and Congress has by an amendment thereto provided that for the purpose of such recovery any court of bankruptcy shall have jurisdiction, and said act specifically says that the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided. There can be little question but that this action was brought and is within the provisions of section 70e, and this court has jurisdiction to hear and determine the matters in controversy.

[2] Defendant further claims that this court is without jurisdiction, because the action is for a money judgment, and plaintiff's remedy, if any, is in a court of law. There are several reasons why his contention cannot be sustained. It is alleged that the bankrupt held property which constituted a trust fund. The following and the administering of trust funds are within equity jurisprudence. Ratcliff v. Clendenin (C. C. A.) 232 F. 61, 63.

[3, 4] Defendant claims that the remedy, if any, should be in a court of law, and pleads this as a defense. However, this is not a defense matter, and, if the defendant is correct, his relief is by motion to transfer to the law side of the calendar, and is not a jurisdiction question. Equity Rule No. 22, (see title 28, § 723). As the defendant has already availed himself of his right to move for a transfer to the law docket, a motion at this time would be but a repetition of matters already passed upon, and cannot again be heard.

This case has been tried by eminent counsel, and every situation bearing upon the questions involved has been developed, and ably argued and presented. Certain facts, however, stand out and are practically conceded.

On and some time prior to the 10th day of April, 1926, the defendant, C. F. Lytle, was the owner of 286 shares of the common stock of the Pollard Oil Company, and James J. Pollard was the owner of 279 shares of the common stock, and also owned 138 shares of preferred stock of said Pollard Oil Company. The Pollard Oil Company, at that time, had outstanding 600 shares of its common stock and was incorporated for $100,000. On April 10, 1926, the said defendant, C. F. Lytle, owning said 286 shares and controlling 15 shares, being all of the common stock, except that owned by James J. Pollard, entered into a written contract with said James J. Pollard for the sale thereof, and for a consideration of $30,100;

payments to be made as follows: (a) $100 in cash, upon the execution and delivery of the contract. (b) $1,000 on April 15, 1926. (c) $1,000 on the 15th day of each and every month thereafter, until the full sum of $30,100 has been paid. Deferred payments to draw interest at 6 per cent. per annum.

As collateral security for the payment of said consideration, James J. Pollard agreed to, and did, assign and deposit with C. F. Lytle his 279 shares of common stock and 138 shares of preferred stock. Provision was made that, in the event of default of payment, C. F. Lytle was to have the right to immediately foreclose his pledged collateral and have the right to vote the 279 shares of the common stock thus pledged. James J. Pollard was to have the right to vote the 276 shares of common stock as long as there was no default. The contract contained the following provision:

"It is expressly understood and agreed that no part of the funds or assets of the corporation shall be used by the party of the second part for the purpose of meeting wholly or in part the payment of any one of his notes, or the interest thereon, save such part of the funds or assets of the assets of the corporation as shall clearly appear from the monthly statement of the business of the corporation, made by the secretary, or by an expert accountant employed at the expense of the second party, to be actually bona fide net profit, accruing upon the stock of the corporation prior to any default in payment, and in determining such net profit there may be included the interest due upon said preferred stock, and no dividends shall be paid by said corporation, except out of net earnings."

The contract further provides that C. F. Lytle was to continue to retain the full voting power vested in the 301 shares of common stock; also that James J. Pollard, the present president and general manager, should be continued as a director, and as such president and general manager have a salary of not less than $3,000 a year. The last paragraph of said contract is as follows:

"Until the terms of this contract are fully completed, the affairs of said corporation shall be managed and controlled as provided in the articles of said corporation, with exception of the condition above named."

C. F. Lytle at the same time acknowledged receipt of 279 shares of common stock of the corporation and 138 shares of the preferred stock of the corporation as collateral, and on the 12th day of April, 1926, and subsequent thereto, there was paid to the defendant, C. F. Lytle, by check and from funds and assets belonging to the corporation, amounts and on the dates as follows:

| | | | Interest. | Principal |
|---|---|---|---|---|
| April 12, 1926 | ............ | | | $  100.00 |
| April 23, 1926 | ............ | | | 1,000.00 |
| May 11, 1926 | .......... | | | 1,000.00 |
| May 11, 1926 | interest on above item | | $  5.00 | |
| May 28, 1926 | .......... | | | 8,000.00 |
| May 28, 1926 | interest on above item | | 64.00 | |
| July 16, 1926 | ........... | | | 1,000.00 |
| July 16, 1926 | interest on above item | | 15.85 | |
| Aug. 17, 1926 | ........... | | | 1,000.00 |
| Aug. 17, 1926 | interest on above item | | 20.83 | |
| Sept. 17, 1926 | .......... | | | 1,000.00 |
| Sept. 17, 1926 | interest on above item | | 25.83 | |
| Oct. 25, 1926 | .........., | | | 1,000.00 |
| Oct. 25, 1926 | interest on above item | | 33.67 | |
| Nov. 20, 1926 | ......... | | | 1,000.00 |
| Nov. 20, 1926 | interest on above item | | 36.67 | |

Total amount of principal and interest..... $201.85  $15,100.00

Application was made to the state court of Iowa for a receiver by the company on December 24, 1926; and on February 3, 1927, the Pollard Oil Company was adjudged bankrupt and is now in process of liquidation in the bankruptcy court. On February 10, 1926, and at all time until the adjudication of bankrupt, the Pollard Oil Company was indebted to general creditors for an amount in excess of $50,000.

[5] It being practically conceded that the payments to C. F. Lytle, above referred to were made by James J. Pollard directly from the assets of the corporation, it would appear that the burden of proof should be on the defendant, to show that the money thus received by him was, in fact, money belonging to James J. Pollard, and not that of the bankrupt, or at least from assets that would not jeopardize the rights of creditors.

[6] However, if it is necessary for the plaintiff to establish that the Pollard Oil Company was insolvent at the time the payments were made to C. F. Lytle, before the burden would shift upon the defendant to establish these facts, the court is satisfied that the evidence shows, and so holds, that said corporation was insolvent at such times. The adjudication of insolvency is an element of evidence that may be considered in establishing prior insolvency. State v. Cadwell, 79 Iowa, 432, 438, 44 N. W. 700.

The books of the company were poorly kept, and unreliable for the establishing of

values. There was an indebtedness at all time in excess of $50,000, and during this period there is no showing of a change in management or conditions in the company, nor of any unusual losses. Yet on February 3, 1926, the creditors force defendant company into bankruptcy, and there are comparatively small assets to meet liabilities. The creditors may not have been the same during this period, but at no time was the amount of indebtedness appreciably less to the time of the appointment of a receiver. No evidence was offered, despite the claim in defendant's answer that there was an unusual loss by reason of an oil war, during the year of 1926; and in view of a subsequent history, the broad statement of the witness Mr. Harrison that the company was solvent is not borne out by the evidence. McGill v. Commercial Credit Co. (D. C.) 243 F. 637, 649.

The payment made to the defendant of $8,064, on or about May 28, 1926, was from the sale of what is known in the record as the South Sioux City bulk station. The proceeds from this sale was on that date paid direct to the defendant. Subsequent thereto, and on June 10th, a resolution was passed by the board of directors of the Pollard Oil Company, which provided that the proceeds from the sale of this bulk station were to be paid to James J. Pollard to retire preferred stock owned by him.

[7] The surrounding circumstances are such that the court is forced to the conclusion that the action by the board of directors was a subterfuge, employed to transfer the proceeds of the sale to the defendant. The financial situation of the company is not shown to be such as to warrant the retirement of preferred stock at that time.

[8] The provisions of the contract between them, wherein it was stipulated that payment could be made on the contract to C. F. Lytle from net profits of the company, and that, should capital assets of the corporation be sold, they could be used in retiring a corresponding part of the preferred stock of James J. Pollard, throws light upon, but does not justify, the subsequent transactions. These provisions of the contract also show the assumed control of the parties to the contract over the entire assets of the company;

the bankrupt was not a party to the contract; also a knowledge by the parties that a payment from the assets of the company would be illegal as against the rights of creditors.

[9] Neither can the defendant escape the charge that he had an implied knowledge of the situation. He cannot own and have the control of all the stock held in the name of the several directors, and be the practical owner of a close corporation, and then be heard to say that he was unacquainted with the affairs of the corporation and the value of its assets and liabilities. In order for the defendant to have any equity under this situation, the burden is upon him to show that the funds which he received out of the assets of the corporation were from earnings of the corporation that belonged to James J. Pollard, or payments that would not affect creditors. In this the defendant has signally failed. Geddes v. Anaconda Mining Co., 254 U. S. 590, 599, 41 S. Ct. 209, 65 L. Ed. 425; Oliver v. Brennan (C. C. A.) 299 F. 106.

[10] The defendant also claims that, if he is required to repay the amount received by him from the bankrupt company, he is entitled to an offset for the sum paid by him as surety for the bankrupt company. This issue was raised by the defendant in an amendment to his answer, filed on April 14, 1928; but this amendment, on motion, was stricken from the files by an order of this court on May 21, 1928, leaving the original answer standing as filed. There is no issue, therefore, now before this court on the right of the defendant to a set-off.

It is therefore ordered and adjudged that the several amounts paid out of the assets of the bankruptcy company to C. F. Lytle, set out herein, are held by said C. F. Lytle, as trustee, for the benefit of bankrupt's estate, and he is ordered to make restitution thereof to the plaintiff, and that upon failure to do so within 30 days that plaintiff have and recover, as against the defendant, judgment in the sum of $15,301.85, together with interest thereon at 6 per cent. from November 20, 1926, the date of the last payment, and also the costs of this action.

To all of which the defendant duly excepts, and his exception is allowed.